UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NIAGARA HANDPIECE, LTD., and
FRANK CSEMICZKY,

                      Plaintiffs,

v.                                          **DECISION AND ORDER**
                                                05-CV-667S

UNITED STATES CITIZENSHIP
& IMMIGRATION SERVICES,

                      Defendant.
_____

## I. INTRODUCTION

In this action, Plaintiffs Niagara Handpiece Ltd., Inc. ("Niagara Handpiece") and Frank Csemiczky ("Csemiczky"), seek a declaratory judgment that the United States Citizenship and Immigration Services ("CIS") erred in denying immigrant status to Csemiczky as a multinational executive or manager. CIS determined that Niagara Handpiece did not meet its burden of establishing that Csemiczky had been or would be employed primarily in a managerial or executive capacity under 8 U.S.C. § 1153(b)(1)(C). Plaintiffs seek relief under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*. Currently before this Court are the parties' Cross-Motions for Summary Judgment.

## II. BACKGROUND

**A.    Factual Summary**

The following facts are not in dispute. Niagara Handpiece, a New York Corporation, is an affiliate of Denti-Tool, Inc., a corporation incorporated and located in the province of Ontario, Canada. (Def's State., ¶ 1). Niagara Handpiece is engaged in the repair and sale of dental equipment. (Def.'s State., ¶ 2). Csemiczky is a Canadian citizen and the president and sole employee of both companies. (Def.'s State., ¶ 3). Both companies are

wholly owned by Csemiczky.  (Def.'s State., ¶ 4).

As the sole employee, Csemiczky spends 18 hours a week repairing dental equipment and 28 hours a week "implementing and managing the business' sales and marketing plan," which includes forecasting sales, reviewing and selecting product lines, preparing an annual budget, strategic planning, developing strategies for increasing customer base, marketing, and advertisement, representing the company at trade shows, and developing and overseeing annual accounting functions.  (Def.'s State., ¶ 5).  He also spends about 18 hours a week supervising a company that performs administrative and office support.  (Def.'s State., ¶ 6).  Another 9 hours a week is spent on business expansion plans; in the future, Csemiczky plans to spend twenty to twenty-five hours per week training a new employee.  (Def.'s State., ¶ 7).

Niagara Handpiece successfully petitioned three times to classify Csemiczky as a non-immigrant intracompany transferee as a manager or executive pursuant to 8 U.S.C. § 1101(a)(15)(L), which authorized him to work temporarily under a L-1A visa.  (Pls' State., ¶¶ 1-3).  Csemiczky worked as President of Niagara Handpiece under 3 successive L-1A visas between February 12, 1998 and February 11, 1999, February 11, 1999 and February 10, 2002, and February 11, 2002 and February 10, 2005.  (Pls' State., ¶¶ 1-3, Adm. Rec., pp. 237-238).[1]

On or about March 1, 2001, Niagara Handpiece sought to classify Csemiczky as an employment based immigrant pursuant to 8 U.S.C. § 1153(b)(1)(c), as a multinational executive or manager.  (Def.'s State., ¶ 8).  Niagara Handpiece filed a Form I-140, also known as an Immigrant Petition for Alien Worker, and submitted documents from Denti-

---

[1]The Certified Administrative Record was manually filed and is maintained in paper form by the Clerk of this Court.

Tool Inc. and Niagara Handpiece to establish that Niagara Handpiece and Csemiczky met the statutory requirements for immigrant status. (Def.'s State., ¶ 9; Compl., Exs. B & C). These documents included articles of incorporation, financial and ownership statements, and United States and Canadian Tax returns. (Def.'s State., ¶ 10; Compl., Ex. C).

On August 15, 2001, CIS requested additional evidence, including: (1) a comprehensive description of Csemiczky's duties with an indication of how such duties have been and will be of a managerial or executive capacity; (2) a list of its employees with a breakdown of their respective duties and the number of hours spent carrying out said duties; (3) an hourly breakdown of duties for Csemiczky; and (4) various tax documents. (Def.'s State., ¶ 11; Compl., ¶ 9, Ex. D). By letter dated November 5, 2001, Csemiczky wrote that he was the sole employee, aside from an independent contractor hired to provide administrative services. (Def.'s State., ¶ 12).

On January 15, 2002, CIS denied the petition on the basis that the record did not demonstrate that Csemiczky's duties had been and would be primarily managerial or executive in nature. (Def.'s State., ¶ 13; Adm. Rec., pp. 66-70). Specifically, CIS found that Niagara Handpiece failed to show that Csemiczky functioned at a senior level within an organizational hierarchy other than in a position title, or that he managed a subordinate staff of professional, managerial, or supervisory personnel who would relieve him of performing non-qualifying duties. (Def.'s State., ¶ 14, Adm. Rec., p. 68). Further, CIS concluded that Csemiczky's duties, as outlined in his application, were vague, and that Niagara Handpiece did not specify what duties Csemiczky had been and would be performing, which qualified his position as managerial or executive in nature. (Def.'s State., ¶ 14, Adm. Rec., p. 68). In this decision, CIS erroneously reported: (1) that Niagara

Handpiece did not provide its Federal United States Tax return for fiscal year 2000, as requested; and (2) that the company's net income was $31,845. (Def.'s State., ¶¶ 16-17, Adm. Rec., p. 68).

On February 15, 2002, Niagara Handpiece filed an appeal with the Administrative Appeals Office ("AAO"). (Def.'s State., ¶ 18, Adm. Rec., p. 63). The basis of the appeal was that the CIS director made "erroneous conclusions" based on the documentation presented and "abused his discretionary powers" by determining that Niagara Handpiece failed to provide an essential document for proper adjudication of the petition. (Def.'s State., ¶ 19, Adm. Rec., p. 63). On November 21, 2003, the AAO dismissed Petitioner's appeal. (Def.'s State., ¶ 20, Adm. Rec., pp. 7-13). In so doing, the AAO noted that CIS did not in fact request the 2000 tax return and that it was not clear why the director used the figure of $31,845 for Petitioner's net income. (Def.'s State., ¶ 21, Adm. Rec., pp. 11-12). Nonetheless, the AAO reasoned that these inaccuracies related to "collateral" matters rather than the core issue of whether Csemiczky had been and would be performing managerial or executive duties. (Def.'s State., ¶ 21, Adm. Rec., p. 12).

To ascertain the answer to this core question, the AAO reviewed the statutory provisions, specifically, 8 U.S.C. §§ 1101(a)(44)(A) & (B), and a list and breakdown of Csemiczky's duties. (Def.'s State., ¶ 22; Adm. Rec., pp. 9-11). The AAO reasoned that:

> While . . . (the) denial of a petition should not be entirely based on the number of a petitioning entity's employees, the circumstances of the instant case indicate that the lack of personnel causes [Csemiczky] to have to perform nearly all of the petitioner's daily operational tasks, which are of a non-qualifying nature.

(Def.'s State., ¶ 23; Adm. Rec., p. 12). The AAO also noted that:

> [Csemiczky's] status as [Niagara Handpiece's] only employee requires that he be the one to market, sell and actually provide the company's clients with

4

> that service. Regardless of [Csemiczky's] discretionary authority, or the fact that [he] performs functions that are clearly essential to [the corporation's] survival and financial success, [his] involvement in these day-to-day operational tasks negates the claim that he primarily acts in a managerial or executive capacity. It is noted that an employee who primarily performs the tasks necessary to produce a product or to provide services is not considered to be employed in a managerial or executive capacity. *Matter of Church of Scientology*, 19 I & N Dec. 593, 604 (Comm. 1988).

(Def.'s State, ¶ 24-25; Adm. Rec., p. 12).

The AAO noted that there was insufficient evidence of a qualifying relationship between Csemiczky and Niagara Handpiece pursuant to 8 U.S.C. § 204.5(j)(3); but ultimately, the appeal was dismissed because the evidence failed to demonstrate that Csemiczky had been and will be employed in a capacity that is primarily managerial or executive. (Def.'s State, ¶ 26; Adm. Rec., p. 12). The AAO concluded that Niagara Handpiece failed to sustain its burden under 8 U.S.C. § 1361 to establish that Csemiczky was eligible to be classified as an employee based immigrant. (Def.'s State, ¶ 27; Adm. Rec., p. 13). Accordingly, the appeal was dismissed. (Id.)

The notice of decision dated November 21, 2003, which was forwarded to counsel, specifically stated that "[a]ny motion to reconsider must be filed within 30 days of the decision that the motion seeks to reopen[,]" and "must be filed with the office that originally decided your case." (Def.'s State, ¶¶ 28, 33; Adm. Rec., p. 7). To be timely, Petitioner's motion to reconsider had to be filed on or before December 24, 2003. (Def.'s State, ¶ 30). The record reflects that Petitioner's Motion to Reconsider was en route to the AAO in Washington, D.C. on December 24, 2003, and did not arrive at the Vermont Service Center, the office that originally decided the case, until January 12, 2004, fifty-two (52) days after the AAO decision was issued. (Def.'s State, ¶¶ 32, 34-35). On January 11,

2005, the AAO rejected the Motion to Reconsider as untimely, pursuant to 8 C.F.R. §§ 103.5(a)(1)(i) and 103.5a(b).  (Def.'s State, ¶ 36; Adm. Rec., p. 2).  There was no claim that the delay in filing was reasonable or beyond the control of the applicant.  (Def.'s State, ¶ 37).

### B. Procedural History

Plaintiff commenced this case by filing a Complaint in the United States District Court for the Western District of New York on September 20, 2005.  On November 21, 2005, Defendant filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiffs filed their own Motion for Summary Judgment on January 11, 2006.[2]  This Court heard oral argument on February 2, 2006, and reserved decision at that time.  For the following reasons, Defendant's Motion for Summary Judgment is granted, and Plaintiffs' Motion is denied.

### III. DISCUSSION

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect

---

[2] In support of its Motion for Summary Judgment, Defendant filed a Memorandum of Law, a Reply Memorandum of Law, a Rule 56 Statement, a Response to Plaintiff's Rule 56 Statement, and the Certified Administrative Record. In support of their Cross-Motion, Plaintiffs filed a Memorandum of Law and a Rule 56 Statement.

the outcome of the suit under governing law." Id.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.    The Parties' Cross- Motions for Summary Judgment**

In the Complaint, Plaintiffs allege four causes of action.  In their first cause of action, Plaintiffs assert that CIS erred in deciding that Csemiczky did not qualify for an immigrant visa as a multinational executive.  For their second cause of action, Plaintiffs allege that CIS disregarded the law, including its own regulations, when it failed to explain why it previously approved Csemiczky for three prior non-immigrant visas as the President of Niagara Handpiece. In their third and fourth causes of action, respectively, Plaintiffs assert that CIS is estopped from denying Csemiczky an immigrant visa and that CIS failed to apply the proper standard of proof in denying the visa.  At oral argument, Plaintiffs

withdrew their third and fourth causes of action.[3]  With respect to Plaintiffs' remaining claims, CIS moves for summary judgment on the grounds that under the undisputed facts of this case, it did not abuse its discretion, disregard agency regulations or law, or otherwise err in making its determination.

## C.   Standard of Review under the Administrative Procedure Act

It is well established that "an applicant for a visa bears the burden of establishing [his or her] eligibility."  Nat'l Hand Tool, Corp. v. K.L. Pasquarell, Director I.N.S., 889 F.2d 1427, 1475 (5th Cir. 1989).   Once rendered, a decision by CIS to grant or deny a visa preference classification is subject to judicial review under the Administrative Procedure Act ("APA").[4]  See  5 U.S.C. § 702.  Under this provision, an agency action may only be reversed if the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  That is, a reviewing court is "limited to examining the administrative record to determine 'whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"  Nat'l Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 97 (2d Cir. 2001); City of New York v. Shalala, 34 F.3d 1161, 1167 (2d Cir. 1994) (internal quotations omitted).

The APA's highly deferential standard presumes that an agency's action is valid. Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 283 (D.C. Cir. 1981) (internal citations omitted).  Accordingly, a reviewing court may not substitute its own judgment for that of the agency, and must affirm if a rational basis exists for the agency's determination, even if the

---

[3]Plaintiffs specifically withdrew their fourth cause of action as a separate claim, insofar as it relates to the second and third causes of action.  Plaintiffs also clarified that they do not challenge CIS' final decision, which rejected their Motion to Reconsider.

[4] CIS was formerly known as the Immigration and Naturalization Service ("INS").

court might otherwise disagree with it.  Id.

### D. Relevant Statutory Provisions

Each year, CIS grants a limited number of immigrant visas to "certain multinational executives and managers" who serve "in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C); IKEA US v. U.S. Dep't of Justice, I.N.S., 48 F. Supp. 2d 22, 24 (D.C.C. 1999). The term "managerial capacity" is statutorily defined as an assignment within an organization in which the employee primarily:

> **(i)** manages the organization, or a department, subdivision, function, or component of the organization;
>
> **(ii)** supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
> **(iii)** if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
>
> **(iv)** exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.
>
> A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

8 U.S.C. § 1101(a)(44)(A).

The term "executive capacity" means an assignment within an organization in which the employee primarily:

> **(i)** directs the management of the organization or a major component or function of the organization;
>
> **(ii)** establishes the goals and policies of the organization, component, or

function;

**(iii)** exercises wide latitude in discretionary decision-making; and

**(iv)** receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101(a)(44)(B).

Further, the Act provides that, if staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity:

the Attorney General shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function. An individual shall not be considered to be acting in a managerial or executive capacity (as previously defined) merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed.

8 U.S.C. § 1101(a)(44)(C).

The core issue in this case is whether the denial of Niagara Handpiece's immigrant petition on behalf of Csemicsky was arbitrary, capricious or constituted an abuse of discretion.

**E.     CIS' Determination Regarding Csemiczky's Duties**

Plaintiffs challenge CIS' finding that Niagara Handpiece failed to show that Csemiczky's duties were primarily managerial or executive in nature. This Court finds based on the administrative record that CIS' determination was neither arbitrary nor capricious.

As an initial matter, it is undisputed that Niagara Handpiece did not have any employees besides Csemiczky. (Adm. Rec., p. 184). Thus, it cannot be said that Csemiczky managed a department, or supervised or controlled the work of other employees such that his duties could be characterized as "managerial" under 8 U.S.C. §

1101(a)(44)(A). Moreover, the breakdown of Csemiczky's duties clearly supports the conclusion that he was required to perform nearly all of the company's operational tasks. As Csemiczky explained in his February 22, 2001 letter, Niagara Handpiece's business involves two major components, repairs and sales of dental equipment. (Adm. Rec., p. 75). Because Niagara Handpiece had no other employees, Csemiczky could not delegate these business duties. Thus, Csemiczky had to perform any necessary repairs and handle all of the company's sales and marketing functions, including representing Niagara Handpiece at trade shows. By his own admission, Csemiczky spent approximately 46 hours a week cumulatively on repairs and sales. (Adm. Rec., p. 75, 182-84). As Matter of Church of Scientology, 19 I & N Dec. 593, 604 (Comm. 1988) clearly instructs, an employee who primarily performs the tasks necessary to produce a product or to provide services is not considered to be employed in a managerial or executive capacity.

Under the circumstances, CIS appropriately concluded that by engaging in a majority of Niagara Handpiece's day-to-day, non-qualifying activities, Csemiczky was not employed in a capacity that was primarily managerial or executive, nor would he be. See Pasquarell, 889 F.2d at 1477 (5th Cir. 1989) (holding that the evidence established that the employee seeking a permanent visa was engaging in non-qualifying production duties and was not engaged "primarily" in managerial activities); see also Fedin Bros. Co., Ltd. v. Sava, 724 F. Supp. 1103, 1109 (E.D.N.Y. 1989) (holding that the INS' finding that the employee's duties would not be primarily managerial or executive was reasonable, particularly in light of the fact that the company employed only one other individual); Q Data Consulting, Inc. v. I.N.S., 293 F. Supp. 2d 25, 29 (D.D.C. 2003) (holding that the INS' determination that the employee did not work in a managerial or executive capacity was

11

"bolstered by the absence of evidence that a sufficient 'subordinate staff' will 'relieve her from performing managerial nonqualifying duties'").

The parties agree that CIS made two errors in its original decision. Specifically, the Agency: (1) erroneously noted that Niagara Handpiece failed to provide a requested financial document; and (2) under-reported the company's net income. However, the denial of Csemiczky's immigrant visa was not predicated on his failure to provide documents or the net income of the company. Rather, Csemiczky was denied a visa because Niagara Handpiece did not meet its burden of demonstrating that he functioned primarily in a managerial or executive capacity. In this respect, the noted errors did not impact CIS' ultimate conclusion. Under the circumstances, it cannot be said that CIS' determination was arbitrary or capricious such that it should be set aside.

**F.     CIS' Prior Approval for a Non- Immigrant Visa**

When the denial of a petition is inconsistent with prior decisions by an agency, it does not automatically constitute an abuse of discretion. See <u>Sussex Eng'g, Ltd. v. Montgomery</u>, 825 F.2d 1084, 1090 (6th Cir. 1987). Nonetheless, Plaintiffs argue that CIS abused its discretion by denying Csemiczky a permanent visa when the agency had already accepted his status as a manager or executive for the purpose of granting him a non-immigrant visa and thereafter extending it.[5] This Court does not agree. As the Fifth

---

[5]CIS previously granted Csemiczky a nonimmigrant visa as an "intracompany managerial or executive transferee," a classification which includes:

> an alien who, within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States **temporarily** in order to continue to render his services to the same employer or a subsidiary or affiliate thereof **in a capacity that is managerial, executive, or involves specialized knowledge** . . .

Circuit reasoned in National Hand Tool, 889 F.2d at 1476, Plaintiffs' argument "would seem to require [CIS] to be bound by its initial determination that an employee is a manager for purposes of granting a temporary visa when an application for a permanent visa is filed. . . . We are convinced that such a result was not intended by Congress."

Plaintiffs rely on Omni Packaging, Inc. v. U.S. I.N.S., 733 F. Supp. 500 (D.P.R. 1990) for the proposition that an agency's failure to explain inconsistent rulings warrants reversal. As an initial matter, this Court notes that Omni Packaging has no precedential authority in this Circuit, and therefore does not mandate reversal in this case. While it may be better practice for an agency to explain any inconsistencies with its prior rulings, failure to do so does not constitute an abuse of discretion or other basis for reversal in this Circuit. Second, Omni Packaging's subsequent history confirms that prior approval of a non-immigrant visa does not guarantee approval of an immigrant petition, as Plaintiffs suggest. In Omni Packaging, Inc. v. U.S. I.N.S., 930 F. Supp. 28 (D.P.R. 1996), the district court revisited the INS' decision after it had been remanded to the agency, and ultimately upheld its denial of the immigrant petition, despite the prior approvals of the non-immigrant visas.

For the foregoing reasons, this Court finds that CIS' decision to deny Niagara Handpiece's immigrant petition on behalf of Csemiczky was not arbitrary, capricious, an abuse of discretion, or contrary to law. Accordingly, CIS' Motion for Summary Judgment must be granted, and Plaintiffs' Motion seeking the same relief must be denied.

---

8 U.S.C. § 1101(a)(15)(L) (emphasis added).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiffs' Motion is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 5) is GRANTED.

FURTHER, Plaintiffs' Motion for Summary Judgment (Docket No. 11) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.


SO ORDERED.


Dated:  September 23, 2006
       Buffalo, New York

                                                         /s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                         United States District Judge